## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

MILES MORAN, for himself and all others similarly situated,

        Plaintiff,

    v.

KEVA LANDRUM-JOHNSON, Chief Judge of Orleans Parish Criminal District Court; PAUL A. BONIN, CAMILLE BURAS, DARRYL A. DERBIGNY, TRACEY FLEMINGS-DAVILLIER, KAREN K. HERMAN, ARTHUR L. HUNTER, ROBIN D. PITTMAN, DENNIS WALDRON, LAURIE A. WHITE, BENEDICT WILLARD, and FRANZ L. ZIBILICH, in their official capacity as Judges of the Orleans Parish Criminal District Court,

        Defendants.

Case No. 19-cv-13553

(Class Action)

## <u>CLASS ACTION COMPLAINT</u>

1.     Defendants, the Judges of the Orleans Parish Criminal District Court, are responsible for setting conditions of release for people who are arrested and charged with certain crimes in Orleans Parish. Defendants consistently and unlawfully impose secured financial conditions of release in an amount that individuals cannot afford, without any inquiry into or findings concerning their ability to pay or alternatives to incarceration. As a result, the money-based orders of post-arrest release that they impose constitute de facto orders of pretrial detention for those unable to pay — orders that are issued without the legal and factual findings and procedures required for a valid order of pretrial detention. *See Caliste v. Cantrell*, 329 F. Supp. 3d 296, 308–15 (E.D. La. 2018).

2.      Defendants have an institutional financial conflict of interest in every secured money bond that they impose because they act both as supposedly neutral judicial officers and as executives responsible for managing the funds generated by each bail order that they set. Louisiana law provides that if (and only if) an arrestee uses a commercial surety to secure pretrial release, the judges of the Orleans Parish Criminal District Court ("OPCDC") receive 1.8% of the amount of that bond into the court's Judicial Expense Fund,[1] which Defendant Judges control.

3.      These policies and practices result in imminent and ongoing violations of fundamental rights. Plaintiff, on behalf of himself and a class of similarly situated arrestees, seeks a declaration that Defendants' conduct violates the Fourteenth Amendment to the United States Constitution.

## Jurisdiction and Venue

4.      This is a civil rights action arising under 42 U.S.C. § 1983, 28 U.S.C. §§ 2201–02, and the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

5.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## Parties

6.      Plaintiff Miles B. Moran is a pretrial detainee in the custody of Orleans Parish Sheriff Marlin Gusman. He is currently detained at the Orleans Justice Center, 2800 Perdido Street, New Orleans, LA 70119. The Orleans Parish Magistrate has conditioned Mr. Moran's release on payment of a secured money bail that Mr. Moran cannot afford. Pursuant to standard

---

[1] The Judicial Expense Fund is also referred to by the Orleans Parish Criminal District Court as the "General Fund."

court assignment practices applicable to all class members, if the District Attorney accepts the charges against Mr. Moran, his case will be allotted to an as yet unknown section of the court, where one of the Defendant Judges will have the authority to determine his conditions of release. The cases of class members are randomly assigned to court sections over which each of the Defendant Judges preside.

7.      Defendant Keva Landrum-Johnson is the Chief Judge of the OPCDC and presides over Section E. Judge Landrum-Johnson has authority to impose financial conditions of release in cases that are allotted to her section. She has control over the Judicial Expense Fund and relies upon its income to fund the operations of the court.

8.      Defendant Paul A. Bonin is a Judge of the OPCDC and presides over Section D. Judge Bonin has authority to impose financial conditions of release in cases that are allotted to his section. He has control over the Judicial Expense Fund and relies upon its income to fund the operations of the court.

9.      Defendant Camille Buras is a Judge of the OPCDC and presides over Section H. Judge Buras has authority to impose financial conditions of release in cases that are allotted to her section. She has control over the Judicial Expense Fund and relies upon its income to fund the operations of the court.

10.      Defendant Darryl A. Derbigny is a Judge of the OPCDC and presides over Section J. Judge Derbigny has authority to impose financial conditions of release in cases that are allotted to his section. He has control over the Judicial Expense Fund and relies upon its income to fund the operations of the court.

11.      Defendant Tracey Flemings-Davillier is a Judge of the OPCDC and presides over Section B. Judge Flemings-Davillier has authority to impose financial conditions of release in

cases that are allotted to her section. She has control over the Judicial Expense Fund and relies upon its income to fund the operations of the court.

12.     Defendant Karen K. Herman is a Judge of the OPCDC and presides over Section I. Judge Herman has authority to impose financial conditions of release in cases that are allotted to her section. She has control over the Judicial Expense Fund and relies upon its income to fund the operations of the court.

13.     Defendant Arthur L. Hunter is a Judge of the OPCDC and presides over Section K. Judge Hunter has authority to impose financial conditions of release in cases that are allotted to his section. He has control over the Judicial Expense Fund and relies upon its income to fund the operations of the court.

14.     Defendant Robin D. Pittman is a Judge of the OPCDC and presides over Section F. Judge Pittman has authority to impose financial conditions of release in cases that are allotted to her section. She has control over the Judicial Expense Fund and relies upon its income to fund the operations of the court.

15.     Defendant Laurie A. White is a Judge of the OPCDC and presides over Section A. Judge White has authority to impose financial conditions of release in cases that are allotted to her section. She has control over the Judicial Expense Fund and relies upon its income to fund the operations of the court.

16.     Defendant Benedict Willard is a Judge of the OPCDC and presides over Section C. Judge Willard has authority to impose financial conditions of release in cases that are allotted to his section. He has control over the Judicial Expense Fund and relies upon its income to fund the operations of the court.

17.     Defendant Dennis Waldron is an ad hoc Judge of the OPCDC and presides over Section G, whose elected judicial officer, Byron Williams, has been disqualified from presiding over cases. Judge Waldron has authority to impose financial conditions of release in cases that are allotted to his section. He relies upon the Judicial Expense Fund's income to fund the operations of the court.

18.     Defendant Franz L. Zibilich is a Judge of the OPCDC and presides over Section L. Judge Zibilich has authority to impose financial conditions of release in cases that are allotted to his section. He has control over the Judicial Expense Fund and relies upon its income to fund the operations of the court.

19.     The Defendants are each sued in their official capacities as the judges presiding over the sections to which class members' cases are assigned and who have the authority and obligation under state law to determine conditions of pretrial release.

## Factual and Procedural Summary

**A. Defendants' Practice of Imposing Secured Financial Conditions of Release Without Conducting Any Inquiry into or Making Findings Concerning Ability to Pay or Non-financial Alternatives.**

20.     In Orleans Parish, persons arrested on suspicion of committing a state misdemeanor or felony are brought before either the Magistrate or the Commissioners of the OPCDC for a First Appearance Hearing, at which conditions of release are determined.

21.     If the arrestee remains in custody after the First Appearance Hearing, because they were not released on recognizance and could not afford to pay a financial condition of release, then the District Attorney has between 45 to 120 days, depending on whether the charge is a misdemeanor or felony and its severity, in which to accept charges.

22.     If the arrestee has been released from custody after the First Appearance Hearing, the  District Attorney has between 90 to 150 days, depending on whether the charge is a misdemeanor or felony, in which to accept charges.

23.     Charges are accepted by filing of a bill of information or an indictment.

24.     According to reporting by the Metropolitan Crime Commission, the District Attorney accepted 81% of felony charges in 2015.

25.     Once the District Attorney files a bill of information or indictment, the case is randomly allotted to one of the Defendant Judges' dockets, by operation of La. Rules for Criminal Proceedings in District Courts and its Orleans Parish appendix.

26.     Defendant Judges then preside over the arraignment of criminal defendants whose cases have been allotted to them.

27.     At the arraignment, Defendant Judges may again consider conditions of release. Often, Defendant Judges either maintain or increase a financial condition of release that had been set by the Magistrate or Commissioners.

28.     Defendant Judges may also impose a financial condition of release where none was previously imposed.

29.     The Vera Institute of Justice estimates that in the period between August to December 2018, a daily average of 448 prisoners at the Orleans Justice Center were being held on bonds of $100,000 or less. These 448 prisoners had no probation or parole holds and no out-of-state warrants; i.e, the only thing keeping them detained was their inability to pay a money bond.

30.     As a matter of practice, Defendant Judges do not inquire into an arrestee's ability to pay a financial condition of release before imposing one. They do not make findings on the record as to an arrestee's ability to pay.

31.     As a matter of practice, Defendant Judges do not consider nonfinancial alternative conditions of release. They do not make findings on the record as to whether such nonfinancial alternatives would satisfy the government's interest in the arrestee's return for future proceedings or in the community's safety.

32.     On information and belief, some Defendant Judges use the threat of increased financial conditions of release to incentivize guilty pleas at arraignment. An individual previously released pretrial may face the prospect of being detained on an increased bail or instead pleading to a crime for which he will face only a non-custodial sentence.

33.     Miles Moran was arrested on Oct. 1, 2019, on a felony charge of unauthorized entry of a business, La. R.S. § 14:62.4, and a misdemeanor charge of theft under $500, La. R.S. § 14:67(B)(3), arising from allegations that he had shoplifted $21.28 of drinks and potato chips.

34.     He appeared before Magistrate Harry Cantrell on the following day, Oct. 2, 2019, for his first appearance hearing. Magistrate Cantrell ordered that Mr. Moran be released on a $1,250 secured money bond.  Magistrate Cantrell remanded Mr. Moran to Sheriff Gusman's custody because he could not pay that amount.

35.     Mr. Moran's counsel at the Orleans Public Defenders moved for a bond reduction and argued the motion on Oct. 15, 2019. Mr. Moran's counsel argued that he was indigent, had no stable address, and "would be unable to afford any amount of bond." His counsel further represented that she had secured a bed for Mr. Moran at Odyssey House, a residential addiction treatment program. Mr. Moran's counsel requested that he be released on recognizance.

36.     The Assistant District Attorney provided no argument for or evidence concerning why Mr. Moran's detention was necessary. He stated only, "I see one conviction from '17 from Mississippi, no failures to appear. I don't know what his current address situation is now."

37.     Magistrate Cantrell denied, without reason, Moran's request for release on recognizance and instead lowered his secured money bail from $1,250 to $300.

38.     Mr. Moran has not been able to pay this $300 bail and remains jailed as of the filing of this Complaint.

39.     The District Attorney's office has not yet filed a bill of information nor sought an indictment against Mr. Moran, and thus no arraignment is scheduled.[2]

40.     Upon filing of a bill or indictment, Mr. Moran, like any class member in his position, will find himself before any one of the twelve Defendant Judges for arraignment and consideration of conditions of release.

## B.  Defendants' Institutional Financial Conflict of Interest When Determining Conditions of Release

41.      The Defendant Judges depend on fees assessed on for-profit surety bonds to fund the operations of their court.

42.     In Orleans Parish, the Sheriff collects a $3.00 fee on every $100.00 of liability underwritten by a commercial surety (bond company). La. R.S. § 22:822(A)(2).

43.     Of the $3.00 fee collected on every $100.00 of liability underwritten by a commercial surety,

---

[2] Mr. Moran's counsel at the Orleans Public Defenders sought review of Magistrate Cantrell's bond-reduction decision by filing a Petition for Supervisory Writs to  the Louisiana Fourth Circuit on Oct. 29, 2019. That writ application was denied on the same day.  On October 31, 2019, Mr. Moran sought review in by the Louisiana Supreme Court. The Supreme Court denied Mr. Moran's petition on November 1, 2019. Moran filed an emergency petition for writ of habeas corpus, challenging his current detention, in this Court on Nov. 7, 2019. *Moran v. Gusman*, No. 2:19-cv-13503 (E.D. La. Nov. 7, 2019), and seeking release from custody unless or until a conflict-free judicial officer conducts bail proceedings that comply with the U.S. Constitution.

      i.  $1.00 is allocated directly to Orleans Parish Criminal District Court to be managed by the judges.

     ii.  $2.00 is divided as follows:

         1.  40% to Orleans Parish Criminal District Court Judicial Expense Fund;

         2.  20% to Orleans Parish Sheriff's Office;

         3.  20% to Orleans Parish District Attorney;

         4.  20% to Orleans Parish Office of the Indigent Defender.

La. R.S. §§ 22:822(B)(3), 13:1381.5.

44.    No such fee is levied against arrestees who utilize secured personal sureties, post a cash bail, or are released on recognizance or other non-financial conditions of release.

45.    The Defendant Judges deposit the 1.8% fee they receive from commercial surety bonds into the Judicial Expense Fund, from which they pay for the salaries and benefits of their staff, travel for judicial conferences, office supplies, phone service, building maintenance, legal research, and various other day-to-day expenses.[3]

46.    In 2013, an accountant for the OPCDC addressed the New Orleans City Council, stating that the revenue from the 1.8% bond fee was "critical" to the court's ability to meets its monthly payroll expenses.

---

[3] The Defendant Judges' control of the funds collected through the bail bond fee is demonstrated by recent history. Prior to 2012, the judges of the Orleans Criminal District Court used the money collected from the 1.8% bail bond fee to pay for their own personal insurance benefits, including benefits for their spouses. This practice of using the general fund to pay supplemental benefits ceased only after public disclosure by the Louisiana Legislative Auditor. No structural control or mechanism prevents the resumption of this practice, or one like it, in the future.

47.     In recent years, this 1.8% fee on commercial surety bonds accounted for 20–25% of the Judicial Expense Fund, or about one million dollars. Thus, a significant portion of the court's revenue depends upon criminal defendants posting bond through commercial sureties.

48.     Defendant Judges have represented to undersigned counsel that they continue collecting this money but place it in "escrow."  The judges can choose to access this money at any time, and there is no provision under Louisiana law for this funding to be placed into escrow or for it to be used for any purpose other than its statutory purpose to fund the court's operations.

49.     In response to undersigned counsel's public records request, Orleans Parish Criminal District Court Administrator Robert Kazik informed undersigned counsel that in the year between this Court's ruling and the Fifth Circuit's affirmance, the OPCDC had collected $540,407.12 of the conflicted bond funds into "Criminal District Court Criminal Justice 'Escrow Account.'"

50.     In 2015, 97% of those defendants in Criminal District Court who were assessed a financial bail obtained their freedom through a commercial surety. Only 3% paid their full bail in cash.

51.     Spending from the Judicial Expense Fund is controlled by Defendant Judges en banc.

52.     The deposit of the 1.8% fee on commercial surety bonds into the Judicial Expense Fund for Orleans Parish Criminal District Court creates a conflict of interest for Defendant Judges.

53.     Defendants' chambers directly benefit from the collection of the 1.8% fee on bonds. The infrastructure of their court—from staff salaries to office supplies—depends upon the continued generation of money from for-profit commercial surety fees, which are entirely

dependent on their judicial decisions.  As executives who manage these expenditures, and as judges in charge of ensuring that the court continues to operate, Defendant Judges' dual executive and judicial roles destroy the judicial neutrality that is a vital component of the American legal system.

54.     Defendants' policy and practice of refusing to consider ability to pay, refusing to consider non-financial alternatives, imposing de facto orders of detention without the process and substantive legal standards required, and institutional financial conflict of interest violate the Due Process and Equal Protection clauses of the Fourteenth Amendment to the Constitution.

55.     Defendants do not conduct any proceedings concerning whether a person has the ability to pay the amount of money that they require for bail.  Nor do they make any inquiry into or findings concerning whether there is any other non-financial condition or combination of conditions that could reasonably ensure an arrestee's appearance or the safety of the community. Nor do they conduct any of the proceedings required for a valid order of pretrial detention, including an adversarial hearing at which findings are made pursuant to clearly defined legal standards required by federal law concerning whether alternatives to detention exist that could reasonably mitigate any person's purported danger to the community or risk of flight.

56.     Under Defendants' money-based practices, those arrestees wealthy enough to pay are released almost immediately after Defendants set their bail.  Some poorer arrestees eventually make arrangements with private bail bond companies, after spending days or weeks in jail.  And many others, who are too poor to come up with enough money, are left to languish in jail until the resolution of their case.

C. **Defendants' Bail Practices as an Ineffective Means of Ensuring Public Safety or Criminal Defendants' Appearance at Trial.**

57.     The empirical evidence shows that there is no relationship between requiring secured money bail as a condition of release and defendants' rates of appearance in court.

58.     Other jurisdictions employ non-monetary conditions of release, including, but not limited to, unsecured or "signature" bonds, stay-away orders, curfews, or home detention.

59.     Other courts also employ less restrictive methods of maximizing public safety and court appearances when necessary to guard against a particular risk, including unsecured bond, reporting obligations, phone and text message reminders of court dates, rides to court for those without transportation or a stable address, counseling, drug and alcohol treatment, batterer intervention programs, anger management courses, alcohol monitors, or, in extreme cases of particular risk, electronic monitoring, among other services.

60.     Defendants are permitted by state law to use these alternatives but, as a matter of routine, choose not to consider them, even when their widespread use of secured financial conditions results in the pretrial detention of poorer arrestees.

61.     Defendants' policies have ramifications for the entire Orleans community and criminal legal system.

62.     Pretrial detention causes unnecessary lost employment, lost housing and shelter, and creates instability in care for dependent children and parents.  It also unnecessarily subjects detained individuals to violent conditions in the Orleans jail, causing harm to arrestees' physical and mental health. This increases community costs and make a person less stable and healthy upon their ultimate release.

63.     Individuals who are detained pretrial — instead of released on money bail or on a personal bond — have worse case outcomes in every measurable way, even when controlling for all other factors.[4]

64.     Setting a secured money bail without an inquiry into ability to pay and in an amount higher than a person can afford by definition defeats the purpose of money bail — to incentivize a person to return to court — and removes any legitimate (let alone compelling) state interest in the setting of a financial condition.  Nor is setting money bail without findings concerning ability to pay or alternatives to detention the most narrowly tailored way to meet any other legitimate or compelling government interest.

---

[4] Megan Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes* 18 (May 2, 2016), available at https://www.law.upenn.edu/cf/faculty/research/details.cfm?research_id=14047; Arpit Gupta, et al., *The Heavy Costs of High Bail:  Evidence from Judge Randomization* 45 J. Legal Stud. 471, 472, 487 (2016) (finding a 12 percent increase in the likelihood of conviction when money bail is imposed); Paul Heaton, et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 Stanford L. Rev. 711 (2017) (finding that misdemeanor pretrial defendants detained in Harris County, Texas, were 25% more likely to plead guilty, 43% more likely to be sentenced to jail, and had sentences more than twice as long as those defendants who were released pretrial); Lise Olson, *Study: Inmates Who Can't Afford Bond Face Tougher Sentences* Houston Chron., Sept. 15, 2013, available at http://www.houstonchronicle.com/news/houston-texas/houston/article/Study-Inmates-who-can-t-afford-bond-face-tougher-4817053.php (discussing Carlos Mathis, an African-American man, who was held in jail for seven months on minor drug and theft charges because he could not afford money bail, and whose charges were dismissed); Isami Arifuku & Judy Wallen, *Racial Disparities at Pretrial and Sentencing and the Effects of Pretrial Services Programs* (Mar. 11, 2013), available at http://www.pretrial.org/download/research/Racial %20Disparities%20at%20Pretrial%20and%20Sentencing%20and%20the%20Effects%20of%20Pretrial%20Services %20Programs%20-%20NCCD%202013.pdf; Cynthia E. Jones, *"Give Us Free": Addressing Racial Disparities in Bail Determinations*, 16 N.Y.U. Legis. & Pub. Pol'y 919 (2013); Tina L. Freiburger, et al., *The Impact of Race on the Pretrial Decision*, American Journal of Criminal Justice (2010), available at http://libres.uncg.edu/ir/asu/f/Marcum_CD_2010_Impact_of_Race.pdf; *The Hidden Costs of Pretrial Detention* at 3, 19 (Nov. 2013), available at http://www.pretrial.org/download/research/The%20Hidden%20Costs%20of%20 Pretrial%20Detention%20-%20LJAF%202013.pdf (studying 153,407 defendants and finding that "when held 2–3 days, low risk defendants are almost 40 percent more likely to commit new crimes before trial than equivalent defendants held no more than 24 hours"); Arnold Foundation, *Pretrial Criminal Justice Research Summary* 5 (2013), *available at*: http://www.arnoldfoundation.org/sites/default/files/pdf/LJAF-Pretrial-CJ-Research-brief_FNL.pdf (finding that "low-risk defendants held 2–3 days were 17 percent more likely to commit another crime within two years" and that those detained "4–7 days yielded a 35 percent increase in re-offense rates.").

## Class Action Allegations

65.     The named Plaintiff brings this action, on behalf of himself and all others

similarly situated, for the purpose of asserting the claims alleged in this Complaint on a common

basis.

66.     A class action is a superior means, and the only practicable means, by which the

named Plaintiff and unknown Class members can challenge the Defendants' unlawful post-arrest

detention scheme.

67.     This action is brought and may properly be maintained as a class action pursuant

to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

68.     This action satisfies the numerosity, commonality, typicality, and adequacy

requirements of those provisions.

69.     Plaintiff proposes the following class seeking declaratory relief only:

> all individuals with pending state misdemeanor or felony cases
> who will, after acceptance of their charges by the District Attorney,
> appear before Defendant Judges for proceedings concerning
> pretrial release.

**A.      Numerosity.  Fed. R. Civ. P. 23(a)(1).**

70.     Each arrestee is presented with the Defendants' standard money-bond options of

pay or jail.  Arrestees are detained in jail for varying lengths of time depending on how long it

takes them to make the payment that Defendants require for their release, or to obtain a

commercial surety.

71.     The number of current and future arrestees subjected to these policies is

innumerable.  Over fifteen thousand individuals are arrested in Orleans Parish annually. In a

five-month period in 2018, an average of 448 prisoners per day were detained solely on secured

money bonds that they could not afford. Defendants establish post-acceptance release conditions

for a large portion of those arrestees. Including future arrestees, the proposed Class contains thousands of people.

> **B.      Commonality.  Fed. R. Civ. P. 23(a)(2).**

72.      The relief sought is common to all members of the Class, and common questions of law and fact exist as to all members of the Class.  The Plaintiff seeks relief concerning a determination as to whether the Defendants' policies, practices, and procedures violate the rights of the Class members.

73.      These common legal and factual questions arise from one central scheme and set of policies and practices:  Defendants' post-arrest detention policies and procedures (or lack thereof) that they follow when imposing financial conditions of release, and their structural financial conflict of interest in those judicial decisions.  Defendants operate this scheme openly and in materially the same manner every day.  The material components of the scheme do not vary from Class member to Class member, and the resolution of these legal and factual issues will determine whether all of the members of the class are entitled to the constitutional relief that they seek.

Among the most important, but not the only, common questions of fact are:

- Whether Defendants have a policy and practice of refusing to conduct an inquiry into ability to pay prior to requiring secured financial conditions of release;
- Whether Defendants have a policy and practice of routinely refusing to consider non-financial conditions of release in many cases;
- Whether Defendants require secured financial conditions of release without making any findings that those conditions are the least restrictive condition necessary to mitigate any particular risks identified;
- Whether Defendants require de facto orders of pretrial detention based on unattainable secured financial conditions of release without applying any applicable legal or evidentiary standard, let alone by clear and convincing evidence;
- Whether Defendant Judges exercise control over the expenditure of funds generated through the 1.8% fee on commercial surety bonds they set;
- Whether the funds generated from the fee on commercial surety bonds are significant such that they would provide a possible temptation to the average man

as a judge.

Among the most important common question of law are:

- Whether Defendants violate the Fourteenth Amendment's Due Process and Equal Protection Clauses by requiring a financial condition of pretrial release without inquiry into and findings, by clear and convincing evidence, concerning a person's ability to pay and alternative non-financial conditions of release after a robust adversarial hearing;

- Whether Defendants' institutional financial conflict of interest in the imposition of secured financial conditions of release violates the Fourteenth Amendment's Due Process Clause.

**C.     Typicality.  Fed. R. Civ. P. 23(a)(3).**

74.     The named Plaintiff's claims are typical of the claims of the other members of the Class, and he has the same interests in this case as all other members of the Class that he represents.  Each of them suffers injuries from the Defendants' failure to comply with basic constitutional provisions:  they each face confinement in jail because they could not afford to pay Defendants' required bond amount.  The answer to whether Defendants' policies and practices are unconstitutional will determine the claims of the named Plaintiff and every other Class member.

75.     If the named Plaintiff succeeds in his claim that the Defendants' policies and practices concerning post-arrest detention violate his constitutional rights, that ruling will likewise benefit every other member of the Class.

**D.     Adequacy.  Fed. R. Civ. P. 23(a)(4).**

76.     The named Plaintiff is an adequate representative of the Class because his interests in the vindication of the legal claims that he raises are entirely aligned with the interests of the other Class members, who each have the same basic constitutional claims.  He is a

member of the putative Class, and his interests coincide with, and are not antagonistic to, those of the other Class members.

77.     There are no known conflicts of interest among members of the proposed Class, all of whom have a similar interest in vindicating their constitutional rights in the face of their unlawful treatment by their local government.

78.     Plaintiff is represented by attorneys from the Roderick and Solange MacArthur Justice Center in New Orleans ("MacArthur Justice Center")[5] and Civil Rights Corps[6] who have experience in litigating complex civil rights matters in federal court and knowledge of both the details of the Defendants' policies and practices and the relevant constitutional and statutory law. They have litigated a similar claim in this Court against OPCDC Magistrate Cantrell. *Caliste v. Cantrell*, No. 17-cv-06197.

79.     The efforts of Class counsel have so far included investigation of Defendants' money-based pretrial detention system, interviews of jail inmates and attorneys practicing in the area, consultation with local and national experts, and research regarding the legality of Defendants' secured money-bail regime.

80.     Class counsel have studied the way that post-arrest detention systems function in other cities and counties in order to investigate the wide array of lawful options in practice for municipal entities.

---

[5] The MacArthur Justice Center is a non-profit public interest law firm. Undersigned counsel, Jim Craig, is Director of the MacArthur Justice Center's Louisiana office and has practiced in federal and state courts in Mississippi and Louisiana for over thirty years. He has litigated multiple complex civil matters, including class actions. Undersigned counsel Eric Foley is an attorney at the MacArthur Justice Center and has practiced law in Louisiana for eight years, litigating a wide variety of complex civil matters in state and federal court, including class action cases.
[6] Civil Rights Corps is a non-profit civil rights organization based in Washington, D.C.  Counsel from Civil Rights Corps has been counsel in nearly twenty similar federal civil rights class action lawsuits.

81.     Class counsel also have experience litigating similar challenges in other jurisdictions and years of experience litigating complex and important cases in Louisiana federal courts.

82.     As a result, counsel have undertaken significant efforts toward becoming intimately familiar with the Defendants' scheme and with all of the relevant state and federal laws and procedures than can and should govern it.  The interests of the members of the Class will be fairly and adequately protected by the named Plaintiff and his attorneys.

**E.     Rule 23(b)(2).**

83.     Class action status is appropriate because Defendants, through the policies, practices, and procedures that make up their post-arrest money-based release and detention scheme, act in the same unconstitutional manner with respect to all class members.  Defendants have created and applied a scheme of post-arrest detention and release procedures that requires presumptively innocent arrestees to pay a bond to a commercial surety to secure their release. Defendants release those who can pay and detains those who cannot, without considering alternative non-financial conditions of release or conducting the constitutionally required inquiry into ability to pay.

84.     The Class therefore seeks declaratory relief as to Defendants' policies, practices, and procedures, which are unconstitutional in materially the same way for every class member. Because the putative Class challenges Defendants' scheme as unconstitutional through declaratory relief that would apply the same relief to every member of the Class, Rule 23(b)(2) certification is appropriate and necessary.

## Claims

**Count One:  Defendants' Policies and Practices Violate Plaintiff's Rights By Jailing Him Solely Because They Cannot Afford a Money Payment Without an Inquiry Into and Findings Concerning Their Ability to Pay or Non-Financial Alternative Conditions of Release.**

85.     Plaintiff incorporates by reference the allegations in paragraphs 1–84.

86.     The Fourteenth Amendment's Due Process and Equal Protection Clauses have long prohibited keeping a person in jail solely because of the person's inability to make a monetary payment.  Defendants violate Plaintiff's fundamental rights by keeping him in jail after arrest when he cannot afford to pay the amount of money set by Defendants without an inquiry into and findings concerning their ability to pay or alternative non-financial conditions of release. Pretrial detention, whether transparent or de facto through unattainable conditions of release, requires a finding that pretrial detention is necessary because alternatives are insufficient to serve the government's compelling interests. Due process further requires that this substantive finding be made pursuant to robust procedural safeguards, including notice, an opportunity to be heard and to confront evidence, counsel, and findings on the record by clear and convincing evidence explaining the evidence relief on to find that pretrial detention is necessary.

**Count Two:  Defendants' Institutional Financial Conflict of Interest in the Imposition of Secured Financial Conditions of Release Violates Due Process**

**87.**     The Due Process Clause ensures the fundamental neutrality of American judicial proceedings.  Defendant Judges' dual role as judge determining conditions of pretrial release and as executives in charge of managing the Court's finances that are significantly affected by these judicial decisions creates an institutional conflict of interest that deprives Plaintiffs of their right to a neutral tribunal. In Defendants' courtrooms, Defendants impose these secured financial conditions of release that Defendants know will result in their collecting and controlling 1.8% of

the bond amount into a fund that they manage. This creates an intolerable judicial financial conflict of interest and results in a proceeding that lacks the basic neutrality required in American law.

## Prayer for Relief

WHEREFORE, Plaintiff and the other Class members request that this Court issue the following relief:

a. A declaratory judgment that the Defendants violate the named Plaintiff's and Class members' constitutional rights by jailing Plaintiff and Class members and keeping them in jail solely because they are poor and cannot afford to pay an amount of money to secure release without a finding that this wealth-based pretrial detention is necessary and without providing the procedural safeguards required by due process to ensure the accuracy of that finding.

b. A declaratory judgment that Defendants have a conflict of interest that violates the Due Process rights of class members appearing before them where they impose secured financial conditions of pretrial release and control the fund into which fees based on those conditions are placed.

Respectfully submitted,

*/s/ Eric A. Foley*
Eric A. Foley, La. Bar No. 34199, T.A.
James W. Craig, La. Bar No. 33687
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, La 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
eric.foley@macarthurjustice.org
jim.craig@macarthurjustice.org

_/s/ Alec Karakatsanis_
Alec Karakatsanis, D.C. Bar No. 999294
(_pro hac vice_ application pending)
Civil Rights Corps
1601 Connecticut Avenue, Suite 800
Washington, DC 20009
(202) 681-2409
alec@civilrightscorps.org

_Counsel for Plaintiff_