UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MILES MORAN and GERARD TAYLOR, for themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 19-cv-13553-EEF-MBN<br>Consolidated with 20-cv-1275 |
| v. | (This filing pertains only to Matthews v. Herman, 20-cv-01275) |
| KEVA LANDRUM-JOHNSON, Chief Judge of Orleans Parish Criminal District Court et al., | (Class Action) |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' FRCP MOTION TO DISMISS**

May It Please The Court:

This reply memorandum is submitted by Defendants, Keva Landrum-Johnson, Paul Bonin, Camille Buras, Darryl Derbigny, Tracey Flemings-Davillier, Karen Herman, Hunter Harris IV, Robin Pittman, Dennis Waldron, Laurie White, Benedict Willard, and Franz Zibilich ("the Judges") in support of their Motion to Dismiss Plaintiffs' Original and Amended Class Action Complaints for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). In response to Plaintiffs' incorporation of their arguments in *Moran v. Landrum-Johnson*, 19-cv-13553, Defendants also incorporate their arguments in the *Moran* memoranda supporting their motion to dismiss (ECF. No. 28 and No. 38) and in the May 27, 2020 oral arguments. Defendants further reply to the arguments made in Plaintiffs' memorandum in opposition to Defendants' motion to dismiss in this case as follows:

I.  **The fact that the Plaintiffs had no plan to request and, in fact, did not request bail modification at their arraignment does not relate to mootness, but rather to their claims that they were in imminent danger of being subject to an unconstitutional bail modification hearing.**

Plaintiffs claim that, "at the moment they filed suit, they were about to be assigned at random to one of the Defendants' courts and presented to that court for a hearing that violated their rights." Doc. 59 at 2-3. They admit that this imminent future "hearing" is crucial to their standing. *Id.* The "hearing" that Plaintiffs claim was imminent was a *bail modification hearing*, not a general arraignment hearing. However, at the time of filing, Plaintiffs had no plan whatsoever to seek a bail modification, and indeed, did not ask for a bail modification at arraignment. Their alleged injury from the challenged action – an unconstitutional bail modification hearing – is not possible unless a bail modification hearing occurs in the first place. In this case, the occurrence of that future bail modification hearing was purely conjectural. Further, the fact that Plaintiffs had not requested and did not plan to request a future bail modification has nothing to do with prosecutorial decisions. As a result, Plaintiffs' argument that future prosecutorial decisions cannot negate an imminent harm is a red herring because the lack of an imminent or immediate harm in this case was a result of Plaintiffs' own actions (or lack thereof).

II.  **Plaintiffs do not have standing because, at the time the action was commenced, they did not face a concrete threat of being subject to an unconstitutional bail hearing, were not seeking pre-enforcement review of a criminal statute, and were not subject to discrimination as a result of an undisputed future plan or action.**

Plaintiffs rely on three types of cases in an attempt establish their standing. First, they rely upon cases in which plaintiffs sought a declaratory judgment regarding private parties' rights and duties under agreements or in connection with patents or trademarks when a threat of litigation had been made pursuant to those instruments. *See MedImmune, Inc. v. Genentech, Inc.*,

{01096199 - v1}

549 U.S. 118 (2007) (defendant threatened plaintiff with a letter demanding royalties for a drug defendant believed was subject to a patent and license agreement); *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019) (defendant threatened plaintiff with the enforcement of a non-disclosure agreement if plaintiff disclosed an SEC whistleblower letter); *Vantage Trailers Inc. v. Beall Corp.*, 567 F.3d 745, 750 (5th Cir. 2009) (finding that a letter threatening legal action weighed in favor of finding a controversy). Second, they rely on upon cases in which plaintiffs sought pre-enforcement review of criminal statutes pursuant to which they could be arrested if they exercised rights in violation of the challenged statutes. *See Steffel v. Thompson*, 415 U.S. 452 (1974) (plaintiff challenged a criminal statute pursuant to which he was threatened with arrest for handbilling); *Seals v. McBee*, 898 F.3d 587 (5th Cir. 2018) (plaintiff challenged a criminal statute pursuant to which he was arrested for making some form of threats to the police). Third, they rely upon cases in which plaintiffs are unquestionably part of a group who faced discrimination if the defendants were allowed to take action pursuant to an undisputed plan or practice. *Frame v. City of Arlington*, 657 F.3d 215, 235–36 (5th Cir. 2011) (plaintiffs, as disabled individuals, faced discrimination if the city was allowed to move forward with undisputed plans for building sidewalks); *Bailey v. Ryan Stevedoring Co., Inc.*, 613 F.2d 588 (5th Cir. 1980) (plaintiff, a union member, faced discrimination as a result of the segregation of the unions and the undisputed 50%-50% hiring rule). Unfortunately, none of these cited cases support standing for these plaintiffs, who (1) have never been threatened by the defendant Judges with an unconstitutional action, (2) do not challenge the criminal law pursuant to which they were arrested, and (3) did not unquestionably face discrimination as a result of an undisputed future plan or action.

Supreme Court decisions relating to standing for a future injury, "have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune*, 549 U.S. at 127 (*quoting Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41) (1937). The *Medimmune* Court explained that when a defendant lodges an actual threat to take civil or criminal action ("threat of harm") against a plaintiff that forces the plaintiff to choose "between abandoning his rights or risking prosecution [or civil litigation]," there exists "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127-129. The *Medimmune* plaintiff, who received a letter from the defendant demanding royalties for what it considered to be patent infringement, elected to pay the demanded royalties to avoid the injury she would face in a patent infringement suit by the defendant and seek a declaratory judgment that she was not infringing upon the patent. *See generally Id*. In *Frye*, the court reached a similar conclusion despite the fact that the defendant's threat to plaintiff did not use the word "litigation" finding that the defendant letter's language, which "reserve[d] all of its rights, including but not limited to its rights under both the PIIA and applicable law, to enforce the agreement or seek a remedy for any breach" implied a threat of litigation. ." *Frye*, 953 F.3d at 295. Plaintiffs misconstrue *Frye* to stand for the broad idea that the "threat of injury need not be explicit to create a case or controversy; rather, it may be "indirect or implicit or covert'" R. Doc. 34 at 8 (*citing Frye*, 953 F.3d at 295). However, they ignore the requirement of an actual concrete threat, whether implicit or explicit, in attempting to apply *Frye*'s holding to support Plaintiffs' standing in this case. Plaintiffs' complaint does not allege that the Defendant Judges

threatened them with an unconstitutional bail hearing in an attempt to induce them to refrain from exercising their rights. How could they have? When the action was commenced, neither plaintiff had a case pending before any of the Defendant Judges.

Even if this Court departs from the concrete threat requirement and accepts that Plaintiffs faced some abstract threat from the Defendant Judges, "threats of legal action, alone, cannot create an actual controversy under the Declaratory Judgment Act . . . [the plaintiff] must still demonstrate that the controversy was sufficiently immediate and real." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 751 (5th Cir. 2009) (*citing Scholle Corp. v. Blackhawk Molding Co., Inc.*, 133 F.3d 1469, 1472 n. 1 (Fed.Cir.1998)). In *Vantage*, though the Court noted that the defendant's threat of legal action for trademark infringement weighed in favor of finding a case or controversy, it nevertheless agreed with the district court that the plaintiff did not have standing because it "did not have a substantially fixed and definite trailer design when it filed the action*.*" *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 749 (5th Cir. 2009). Similarly, when the plaintiffs filed this action, they had no fixed and definite plan to seek a bail modification from any of the Defendant Judges. Neither Plaintiff had requested bail modification from any of the Defendant Judges at the time the action commenced. *See* R. Docs. 53-4 and 53-5 (revealing that there were no pending matters relating to bail).

Plaintiffs also cannot rely upon cases in which plaintiffs had standing to seek "pre-enforcement review of a criminal statute." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 15 (2010). Though Matthews and Cloud attempt to squeeze into the shoes of the *Steffel* and *Seals* plaintiffs, they simply do not fit. *See generally Steffel*, 415 U.S. 452; *Seals*, 898 F.3d 587. Both Steffel and Seals challenged a criminal statute pursuant to which they faced future prosecution. In *Steffel* the court explained in detail threat of future prosecution that plaintiff faced:

> [P]etitioner has alleged threats of prosecution that cannot be characterized as 'imaginary or speculative,' . . . He has been twice warned to stop handbilling that he claims is constitutionally protected and has been told by the police that if he again handbills at the shopping center and disobeys a warning to stop he will likely be prosecuted. The prosecution of petitioner's handbilling companion is ample demonstration that petitioner's concern with arrest has not been 'chimerical,' . . . In these circumstances, it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights . . . Moreover, petitioner's challenge is to those specific provisions of state law which have provided the basis for threats of criminal prosecution against him.

*Steffel*, 415 U.S. at 459. Like the private rights cases discussed *supra*, Steffel was actually threatened with arrest. In addition, he was challenging the constitutionality of the criminal statutes pursuant to which those threats were made. *See generally Id*. In *Seals*, the plaintiff was actually arrested (as opposed to threatened) pursuant to the challenged statute, and though the district attorney had informally agreed to forego prosecution, Seals alleged injury was a direct result of the criminal statute underlying his arrest. *See generally Seals v. McBee*, 898 F.3d 587. Here, Matthews and Cloud are not challenging the criminal statutes underlying their arrests and initial detention.

Finally, cases in which plaintiffs unquestionably faced injury caused by the future execution of an undisputed plan or policy do not support Plaintiffs' argument for standing. Both *Frame v. City of Arlington* and *Bailey v. Ryan Stevedoring Co., Inc.* involve the future execution of undisputed plans or policies that would cause injury to plaintiffs. In *Frame*, there was no question about the city's plans to build the sidewalks, which the disabled plaintiffs alleged violated federal law and caused them future injury by, "negatively affect[ing] their day-to-day lives by forcing them to take longer and more dangerous routes to their destinations." *Frame*,

657 F.3d at 235–36. In *Bailey,* there was no doubt that the existing segregation of the labor unions combined with the established "50%-50% hiring rule" posed a future threat of injury to the plaintiff, who was a union member. *Bailey*, 613 F.2d at 591. In both *Frame* and *Bailey*, the existence of the challenged plan (to build sidewalks) and policies (segregation plus the hiring rule) were not in dispute. Here, the alleged unconstitutional policies and procedures which plaintiffs allege will cause them future injury are in dispute. The dispute about the existence of unconstitutional bail hearing procedures (regardless of whether they exist or not) affects the legal standing injury, because it introduces uncertainty regarding whether the plaintiffs face a concrete and particularized injury and distinguishes these plaintiffs from Frame and Bailey, both who challenged the future execution of established undisputed practices. In addition, unlike Frame and Bailey, whose alleged injuries as disabled persons and a union member respectively, did not rely upon future hypothetical events – they were already members of the group of people who were affected by future execution of undisputed plans and policies when they filed suit – Matthews and Cloud were not criminal defendants with pending cases in any of the Defendant Judges divisions of court when they filed suit. Matthews and Cloud are more comparable to the plaintiffs "[i]n East Texas Motor Freight System, Inc. v. Rodriguez, . . . who lacked the requisite standing to assert that a "no-transfer" employment practice of their employer violated Title VII because they did not possess the necessary qualifications for the positions to which they had requested transfer." *Bailey*, 613 F.2d at 590. At the time this suit was filed, Plaintiffs too did not possess the "necessary qualifications," namely criminal defendants with pending bail modification motions in the defendant Judges courtroom, to challenge the defendant Judges' bail hearing procedures.

### III. Plaintiffs cannot rely upon potential class members' standing; instead, they must establish that they have standing to represent the proposed class.

Plaintiffs seemingly argue that the fact that they are seeking to represent a class strengthens the named plaintiffs' standing. *See*. R. Doc. 34-17-18. It does not. The Supreme Court has held that "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Pursuant to Article III of the Constitution, federal courts may only hear matters that present a justiciable case or controversy. U.S. Const. III, § 2. "That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, n 6 (2016), as revised (May 24, 2016) (*citing Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n. 20 (1976)) (internal quotations omitted).

In addition, Plaintiffs' unsupported allegations that the Defendant Judges will follow established court-wide policies and procedures when making bail determinations does nothing to confer individual standing to the named defendants against all of the Defendant Judges. In order to support a class action based upon a theory of court-wide policies and procedures allegedly utilized by all the Defendant Judges, the plaintiffs must present significant proof of these alleged court-wide unconstitutional bail hearing procedures. *See generally Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353, 358 (2011) (rejecting the plaintiffs' anecdotal and statistical evidence as "significant proof" that Wal-Mart "operated under a general policy of discrimination" as required "to certify a companywide class"). *Wal-Mart* is applicable here because plaintiffs rely on a court-wide policy to bring federal litigation against *all the Judges* knowing that the named-

plaintiffs' cases can only possibly be assigned to two Judges, at most. The *Wal-Mart* court made clear that this type of policy-based class action litigation cannot rest on allegations and anecdotal and statistical evidence, but requires "significant proof" that such a policy exists. *Id*.

## IV.   Conclusion

For the reasons discussed herein and in Defendants' original memorandum in support of this motion to dismiss, Defendants, Keva Landrum-Johnson, Paul Bonin, Camille Buras, Darryl Derbigny, Tracey Flemings-Davillier, Karen Herman, Hunter Harris IV, Robin Pittman, Dennis Waldron, Laurie White, Benedict Willard, and Franz Zibilich, respectfully request that this Court grant this motion and dismiss Plaintiffs' Class Action Complaint for lack of subject matter jurisdiction.

Respectfully submitted,

/s/ Mindy Nunez Duffourc

**Burglass and Tankersley, LLC**
Dennis J. Phayer (#10408)
dphayer@burglass.com
Mindy Nunez Duffourc (#33618)
mnunezduffourc@burglass.com
5213 Airline Drive
Metairie, LA 70001
Tel: (504) 836-0412
Fax: (504) 287-0452
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of August 2020, a copy of the foregoing pleading has been forwarded to all counsel of record via CM/ECF filing through the United States District Court system, email and/or United States Mail.

/s/ Mindy Nunez Duffourc