UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MILES MORAN, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-13553** |
| **KEVA LANDRUM-JOHNSON, ET AL** | **SECTION "L" (5)** |

### ORDER & REASONS

Pending before the Court are Plaintiffs' Motions to Certify Class, R. Docs. 3, 48, and Defendants' Motions to Dismiss, R. Docs. 28, 53. Defendants oppose the Motions to Certify, R. Docs. 33, 52, and Plaintiffs oppose to Motions to Dismiss, R. Docs. 34, 59. Because the motions present interrelated issues, the Court considers them collectively. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

I.  BACKGROUND

Plaintiffs in *Moran* and *Matthews* are pretrial detainees who, at the time of filing, had cases pending in the Orleans Parish Criminal District Court ("OPCDC"). They claim that they were impermissibly jailed despite voicing to the court their inability to pay the bond amounts imposed. R. Doc. 10 at 8-10. As a result, they purportedly remain jailed. R. Doc. 10 at 9-10. On June 5, 2020, the *Moran* and *Matthews* cases were consolidated on the grounds that they involved the same defendants and identical allegations, requested the same type of relief, and that consolidation would conserve judicial resources and allow for timely resolution of the matters. R. Doc. 45.

Defendants are thirteen OPCDC judges with one notable exception: Judge Cantrell. A substantially similar suit was previously filed by different Plaintiffs against Judge Cantrell (the "*Caliste*" case or action). Just as in the *Caliste* case, Plaintiffs here assert two claims relating to

1

Defendants' bail practices.[1] First, Plaintiffs allege that the Defendant Judges violate due process by systematically setting bond for criminal defendants without first inquiring into their ability to pay the bond or considering alternative nonfinancial conditions of release ("Count I"). Second, Plaintiffs allege that Defendants violate due process by serving in the "dual role" of determining conditions of pretrial release and managing the court's finances. ("Count II"). R. Doc. 10 at 20-21. According to Plaintiffs, this dual role creates an unconstitutional conflict of interest because Louisiana law requires a portion of bond amounts collected from commercial sureties to be allocated to a "judicial expense fund" which is administered by the judges and, except to pay judges' salaries, shall "be used for any purpose connected with, incidental to, or related to the proper administration or function of the court or the office of the judges thereof." La. Rev. Stat. §§ 13:1381.4(C), (D); R. Doc. 10 at 11-12.

On June 9, 2020, Governor Jon Bel Edwards signed Act 110 of the 2020 Regular Session of the Louisiana Legislature. H.B. 842, 2020 Reg. Sess. (La. 2020). The Act requires that all fees from commercial sureties formerly deposited into the Judicial Expense Fund be held in an escrow account that is annually distributed to the City of New Orleans and used to "defray[] the expenses of the criminal justice system in Orleans Parish." *Id*. Based on this legislative change, Plaintiffs stipulated to the dismissal of Count II in both *Moran* and *Matthews*, thus only claims related to Count I are currently before the Court.

---

[1] Notably, the claims at issue in both *Moran* and *Matthew* are identical to those raised in *Caliste* and have been litigated at length in the *Caliste* action. In *Caliste*, the Court found that the Fourteenth Amendment requires an inquiry into ability to pay bond and that Judge Cantrell's failure to make this inquiry violated due process. 329 F. Supp. 3d 296, 312 (E.D. La. 2018), *aff'd*, 937 F.3d 525 (5th Cir. 2019). The Court also found that Judge Cantrell's role violated due process because Judge Cantrell both managed bond fee revenue and determined whether a pretrial detainee is able to pay bail and the bond amount. 329 F. Supp. 3d 296, 317 (E.D. La. 2018). This finding was affirmed by the Fifth Circuit, *Caliste v. Cantrell*, 937 F.3d 525 (5th Cir. 2019), and the Supreme Court denied writ, *White v. Cain*, 140 S. Ct. 1120 (2020).

## II. PENDING MOTIONS

### A. Plaintiffs' Motions to Certify Class [R. Docs. 3; 48]

Plaintiffs seek Rule 23(b)(2) class certification with respect to Count I claims in this consolidated case. In both *Moran* and *Matthews*, Plaintiffs seek certification of the following class: "All individuals with pending state misdemeanor or felony cases who will, after acceptance of their charges by the District Attorney, appear before Defendant Judges for proceedings concerning pretrial release." R. Doc. 3-1 at 2; 48-1 at 2. In the motions, Plaintiffs maintain that Defendants apply the same allegedly unconstitutional bail practices to the entire class,[2] their claims are representative of the class claims, the named plaintiffs' stake in the controversy is sufficient to represent the class, and all the Defendants have acted in the same way with respect to all class members. R. Docs. 3-1 at 3, 11-1 at 3-4.

Defendants oppose the motion. R. Doc. 33. Defendants argue that the class is not certifiable primarily because the named representatives do not have standing to represent the class and because the requirements of Rule 23 have not been satisfied. R. Doc. 33 at 1.

### B. Defendants' Motions for Dismiss [R. Docs. 28; 53]

Defendants have filed two motions to dismiss for lack of subject matter jurisdiction in this consolidated matter.[3] R. Docs. 17, 28, 53. In both motions, Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). Like the motions for class certification, these motions are almost identical, at least with respect to the legal issues raised.

Defendants argue the *Moran* and *Matthews* Plaintiffs lack standing because their injuries

---

[2] Specifically, Plaintiffs argue the Defendant Judges collectively "fail to: make an inquiry into ability to pay, making findings as to ability to pay, consider nonfinancial alternative conditions of release, make findings as to the sufficiency of those alternative conditions to reasonably ensure . . . future appearance in court or community safety, or apply the clear-and-convincing evidentiary standard for these findings when they result in pretrial detention." R. Doc. 48-1 at 2.

[3] Defendants had originally filed a partial motion to dismiss Count II in *Moran*, R. Doc. 17, but this motion is moot in light of Act 110 of the 2020 Regular Session and the ensuing stipulation of dismissal., R. Doc. 55.

are speculative, conjectural, and hypothetical, and cannot be traced to the actions of the Defendant Judges, in contravention of Article III's "injury in fact" requirement. R. Doc. 28-1 at 4. In essence, Defendants argue Plaintiffs' injury—"the deprivation of constitutional rights in a future bail reduction hearing"—is hypothetical and speculative because the injury would require the District Attorney to accept the charges against them, their case to be assigned to a section of the Court, and the presiding Judge to consider and rule on a motion that deprived Plaintiff of their rights, a chain of events that had not occurred with respect to either named Plaintiff at the time the suit was filed. R. Doc. 28-1 at 6. Defendants argue that even the *Matthews* Plaintiffs, whose charges have been accepted, do not face imminent injury because an injury would require a yet-to-be-determined Defendant Judge who could make a bail modification decision, to actually make such a modification, and to do so in an unconstitutional manner. R. Doc. 53-1 at 6. Defendant argues that the alleged depravation of due process is similarly not traceable to the Defendant Judges because the named Plaintiffs have not yet, and may never, appear before the Defendant Judges for consideration of bail. R. Doc. 53-1 at 7.

    Plaintiffs oppose the motion. R. Doc. 34, 59. Plaintiffs argue that they suffered imminent, concrete and particularized injuries because, at the time of filing, it was substantially certain that their cases would be randomly allotted to a section of the Court presided over by a Defendant Judge. R. Doc. 34 at 9. In Plaintiffs' view, their allegation that the Defendant Judges all engage in unconstitutional bail setting practices, which must be accepted as true at this stage in the litigation, causes an injury that is certain to imminently occur. R. Doc. 34 at 11; R. Doc. 59 at 2 (incorporating the arguments made in the opposition brief in *Moran*). Plaintiffs also argue the claims of a class are not rendered moot simply because a named plaintiff's claims have become moot, as is often the case where the injury is capable of repetition yet evades review. R. Doc. 34 at 17; R. Doc. 59

4

at 3.

### III. LAW & DISCUSSION

Because "the Supreme Court has repeatedly instructed that [a court] should first decide whether a proposed class satisfies Rule 23, before deciding whether it satisfies Article III—and that there is no need to answer the latter question if the class fails under the former," *Flecha v. Medicredit*, 946 F.3d 762, 768–69 (5th Cir. 2020) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612 (1997)), the Court's analysis begins with the issue of whether class certification is appropriate.

#### A. Class Certification Under Rule 23

Class actions permit representative plaintiffs to litigate their claims on behalf of members of the class not before the court. The purpose of a class action is to avoid multiple actions and to allow claimants who could not otherwise litigate their claims individually to bring them as a class. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 (1983). A district court has great discretion in certifying and managing a class action. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). The party seeking class certification bears the burden of proving all the requirements set out in Rule 23 of the Federal Rules of Civil Procedure.

A class may be certified under Rule 23 if it meets the four prerequisites found in Rule 23(a) and an additional requirement found in Rule 23(b). The four prerequisites for certifying a class include: (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class). *Mullen*, 186 F.3d at 623 (citing *Amchem*, 521 U.S. at 613). If the four prerequisites of 23(a) have been demonstrated, plaintiffs must satisfy one

of the elements of 23(b).

Here, Plaintiffs rely on Rule 23(b)(2), which provides for certification of class actions if the prerequisites of Rule 23(a) are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "If the plaintiffs s[eek] only injunctive and declaratory relief, [there is] no trouble certifying the proposed class[]," assuming the prerequisites of Rule 23(a) are satisfied. *Broussard v. Foti*, No. 00-2318, 2001 WL 699525, at *2 (E.D. La. June 18, 2001). The Court reviews each requirement in turn.

A court must "conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003) (quoting *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003) (quotations omitted)). In conducting this analysis, the court is permitted to "look past the pleadings to determine whether the requirements of rule 23 have been met" because the court "must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996).

### 1. Numerosity—Rule 23(a)(1)

To demonstrate numerosity, Plaintiffs must establish that joinder is impracticable through "some evidence or reasonable estimate of the number of purported class members." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000). While the number of members in a proposed class is not dispositive, the Fifth Circuit has cited with approval Professor Newberg's treatise which "suggest[s] that any class consisting of more than forty members 'should raise a presumption that joinder is impracticable.'" *Mullen*, 186 F.3d at 624. A court may consider whether the class

encompasses future, currently unknown members when making this determination. *Pederson*, 213 F.3d at 868 ("[T]he fact that the class includes unknown, unnamed future members also weighs in favor of certification.").

Plaintiffs argue numerosity is satisfied because thousands of people are arrested each year in Orleans Parish, hundreds of which are detained pending trial, and the class is constantly evolving because pretrial release conditions are adjudicated every day. R. Doc. 3-1 at 5. Defendants contend numerosity fails because the size of the class is inherently speculative. R. Doc. 33 at 17.

Plaintiffs in this case satisfy the numerosity requirement because there is a speculative, yet significant number of potential class members whose charges have been accepted and have been subjected to improper bail decisions. While not all those arrested and detained pretrial in Orleans Parish will proceed in a fashion that allows him or her to challenge the conditions of release, the number of individuals that remain in pretrial custody due to an inability to made bail and the constantly evolving nature of the class satisfy the numerosity requirement here.

### 2. Commonality—Rule 23(a)(2)

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982)). In other words, commonality is satisfied where plaintiffs' claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Here, Plaintiffs allege that all twelve Defendant Judges fail to inquire about an arrestee's

ability to pay before imposing a financial condition of release and fail to consider nonfinancial alternative conditions of release. *Matthews*, R. Doc. 1 at 7. According to Plaintiffs, commonality is satisfied because their claims all concern common facts, such as whether Defendants in fact refuse to consider affordability and non-financial conditions of release, and resolution of legal questions, such as whether the Defendant Judges' practices violate the Fourteenth Amendment's Due Process and Equal Protection Clauses. R. Doc. 3-1 at 9; 48-1 at 9. Defendants argue that commonality does not exist because the common questions or law and fact only arise "if a series of future speculative events occurs in each class member's criminal case." R. Doc. 33 at 11. In particular, Defendants argue common questions about the Defendant Judges' actions will not arise for a large number of class members who will have their charges dropped, their cases assigned to the magistrate judge, or municipal or traffic court, who will set appropriate bail in the appropriate manner, or who will satisfy the conditions of release or otherwise never seek modification of such conditions. *Id*.

As an initial matter, Defendants' opposition misunderstands the proposed class definition. Notably, the class here is comprised of only those individuals whose charges have been accepted by the District Attorney and allotted to a Defendant Judge who will have the opportunity to consider conditions of pretrial release. To that extent, the class does not contain any individual whose case will proceed before anyone but the twelve Defendant Judges, or any individual who will satisfy a condition or bail or fail to proceed before a Defendant Judge with respect to his or her conditions of release.

The Court recognizes that with respect to the limited number of individuals who will appear before a Defendant Judge for consideration of pretrial release, their claims all involve allegations of a common unconstitutional practice shared by all twelve Defendant Judges. A shared practice

8

or pattern of behavior can be the basis for a class-wide injury and the "[a] policy or practice need not be officially adopted." *M.D. v. Perry*, 294 F.R.D. 7, 39 (S.D. Tex. 2013).

However, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule [23]—that is, he must be prepared to prove that there are in fact . . . common questions of law or fact." *Wal-Mart*, 564 U.S. at 350. In other words, "courts must certify class actions based on proof, not presumptions." *Flecha*, 946 F.3d 762, 768 (5th Cir. 2020). Here, Plaintiffs' case requires proof that all twelve Defendant Judges employ certain bail procedures and that those procedures are unconstitutional.

At this juncture, however, these allegations are completely unsubstantiated since the pleadings are devoid of any specific facts or examples that illustrate what practices the Defendant Judges routinely employ and how such procedures are unconstitutional. No discovery has been conducted in this matter and there is no evidence to even suggest that a single Defendant Judge acts in an unconstitutional manner, let alone all twelve. The Court is not prepared to accept Plaintiffs' allegation at face value for the purpose of class certification without at least some supporting evidence. *See Flecha*, 946 F.3d at 768 (5th Cir. 2020) (holding that the putative class was "left without a common issue" where the plaintiff had not "affirmatively demonstrated" that the defendants acted in the allegedly injurious way towards all class members); *Dockery v. Fischer*, 253 F. Supp. 3d 832, 853 (S.D. Miss. 2015) (finding that commonality was established in light of affidavits, deposition testimony, and expert reports substantiating plaintiffs' claim); *see also In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 139 (N.D. Tex. 2014) ("[Plaintiffs] will face a rigorous analysis by the federal courts, will not be afforded favorable presumptions from the pleadings or otherwise and must be prepared to prove *with facts* . . . their compliance with the requirements of Rule 23.").

Further, Plaintiffs' allegations alone do not allow the Court to conclude that all class members have "suffered the same injury." *Wal-Mart*, 564 U.S. at 350. In fact, the Court questions whether a significant portion of the class has suffered an injury at all. It appears as though a Defendant Judge only has the opportunity to inflict the specified injury on a class member in two scenarios: (1) by imposing new or more onerous financial conditions of release than imposed by the Magistrate Judge, and doing so without considering affordability or alternative conditions; or (2) declining to modify a financial condition imposed by the Magistrate in a manner that was *itself* unconstitutional, again without considering affordability or alternative conditions. The Court is hard pressed to imagine that the first scenario occurs much, if at all. With respect to the second scenario, the Court recently considered a challenge to the administration of bail hearings in OPCDC and, in declining to hold Magistrate Judge Cantrell in contempt of a Consent Judgment entered into in the *Caliste* action, found that he now is substantially compliant with constitutional requirements when presiding over bail hearings. Accordingly, even if Plaintiffs had established that a common practice exists among the twelve Defendant Judges, the application of that practice would not affect the class members in a uniform way, as only some class members would actually be injured as a result. In sum, the Court is skeptical that any class member has actually sustained the alleged injury in the manner described but concedes that discovery on this issue could possibly reveal whether any Plaintiffs are in fact injured, and if so, whether they are injured in the same manner, by the same practices followed by all of the Defendant Judges. Accordingly, the Court will allow the parties to conduct discovery on this issue and re-seek class certification in the light of new evidence that is established.

### 3. Typicality—Rule 23(a)(3)

Rule 23(a)(3) requires that the claims of the class representatives are typical of the class'

claims or defenses. The threshold for typicality is low: class representatives must show similarity between their legal and remedial theories and the theories of the rest of the class. *Mullen*, 186 F.3d at 625. Typicality does not require that the claims of the class are identical, but rather that they share the same essential characteristics—a similar course of conduct, or the same legal theory. *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (citing *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)). However, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157 n.13.

Plaintiffs argue typicality is satisfied because the named representatives were, at the time of filing, "imminently subject to the practices alleged in the Complaint and will suffer the exact same constitutional violations" as all other Class members. R. Doc. 3-1 at 10. Defendants argue that the named representatives' claims are not typical because their criminal cases are now at different stages of the proceeding such that they no longer face the risk of having their bail unconstitutionally modified. R. Doc. 33 at 15.

Like commonality, typicality does not exist at this juncture because the "essential characteristics" of this case have not been identified with the degree of particularity required at the class certification stage. Of course, if, after some discovery, Plaintiffs are able to affirmatively demonstrate that a common legal or factual issue governs resolution of each class members' claim, it is likely that typicality will be satisfied because the named representatives here were, at the time of filing, imminently subject to the allegedly unconstitutional pretrial detention practices of the Defendant Judges.

4. **Adequacy—Rule 23(a)(4)**

Rule 23(a)(4) demands that the named class representatives fairly and adequately represent the claims of the other class members. There can be differences between the position of class

11

representatives and other class members so long as these differences do not "create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen*, 186 F.3d at 626. A district court should evaluate whether the class representatives have a sufficient stake in the outcome of the litigation, and whether the class representatives have interests antagonistic to the unnamed class members. *Id.* (citing *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir.1986)). In addition, the district court should inquire into the zeal and competence of the class representatives' counsel and into the class representatives' willingness to take an active role in the litigation and to protect the interests of absentees. *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir.2001).

Plaintiffs argue adequacy is satisfied here even though the named representatives are almost certain to be released before the resolution of this matter because "the transitory nature of his claims [ensures that] he continues to maintain a sufficient live stake" in the controversy." R. Doc. 3-1 at 11. Defendant argues that the named representatives cannot adequately represent the class because they have not been subjected to the allegedly unconstitutional policies and practices they "claim are central and common to their proposed class." R. Doc. 52 at 11–12. In the *Moran* matter, Defendants specifically stress that Mr. Moran's charges were rejected by the District Attorney after the filing of this case and that Mr. Taylor pled guilty to the felony charge and received credit for time served, extinguishing both plaintiffs of their interest in the case. R. Doc. 33 at 16.

Here, the named representatives and counsel can adequately represent the proposed class. The parties have raised no issues regarding the named representatives' conflicting interests or motivations, and as pre-trial detainees, the representatives have as much of a stake in the outcome of this case as anyone else. The fact that their status as pre-trial detainees might have changed

during the pendency of the case exemplifies why standing exists when an injury is capable of repetition yet evading review. Further, the Court is satisfied that Plaintiffs' counsel, having already secured a favorable decision in *Caliste*, will zealously and competently pursue this case for the benefit of all class members.

   5. **Rule 23(b)(2)**

In addition to satisfying the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one of the requirements of Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(2), which permits "class actions for declaratory or injunctive relief when 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'" *Amchem Prods.*, 521 U.S. at 614, 117 S. Ct. 2231; *see also* Fed. R. Civ. P. 23(b)(2). The rule clearly states that claims seeking injunctive or declaratory relief may be appropriate for Rule 23(b)(2) class certification. Courts have interpreted Rule 23(b)(2) as containing two requirements: "(1) behavior generally applicable to the class as a whole; (2) injunctive relief predominates over damages sought." *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000).

In *Wal–Mart Stores, Inc. v. Dukes*, the Supreme Court set forth the purposes of a 23(b)(2) class:

> The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

564 U.S. 338 (citation omitted).

Plaintiffs argue Rule 23(b)(2) is satisfied because the requested relief—declaratory

judgment—would resolve the issue with respect to the entire class. Plaintiffs stress that Defendants' alleged practice of conditioning pretrial release on the payment of cash bail without questioning an individual's ability to pay affects all proposed class members in the exact same fashion, such that a declaration "setting forth, as this Court did in *Caliste*, the basic substantive and procedural requirements for an order of pretrial detention would equally benefit every member of the class." R. Doc. 3-1 at 13. Defendants, on the other hand, aver Rule 23(b) is not satisfied because there have been no allegations made that the Judges acted or failed to act in any generally applicable way to the class. R. Doc. 33 at 17-19.

The Court is not satisfied that Rule 23(b)(2) is satisfied at this juncture, largely for the same reasons that commonality and typicality were not established. No damages are sought here; accordingly, the only issue is whether Defendants' behavior is "generally applicable to the class as a whole." *See Bolin*, 231 F.3d at 975. However, there is nothing in the record to suggest that the Defendant Judges behave in such a manner. Notably, the pleadings are devoid of anything beyond bare, unsubstantiated assertions that all twelve Defendant Judgments routinely violate Plaintiffs' constitutional rights when reconsidering pretrial release conditions. Discovery has not occurred in this case yet; accordingly, there is no evidence to support these claims. Without more information, the Court cannot determine whether the Defendants do abide by a common practice, let alone whether that practice is unconstitutional.

At this juncture, the Court believes that class certification is not warranted. However, the Court recognizes that information revealed during the discovery process may shed light on whether commonality, typicality, and the 23(b)(2) requirements are satisfied. Accordingly, the Court will deny this motion without prejudice to Plaintiffs' right to refile in light of further discovery. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) ("[D]iscovery often has been used to

illuminate issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation.").

B. Standing

Article III of the Constitution limits the jurisdiction of the judiciary to "cases" or "controversies." U.S. Const. III, § 2. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrylser Corp. v. Cuno*, 547 U.S. 332, at 341–42 (2006) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976)). In order to satisfy the Constitution's Article III standing requirements, a plaintiff must show that: (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Because Defendant's motions to dismiss collectively target all three elements of standing, the Court will discuss each element in turn.

Whether standing must be established for absent class members before class certification can be granted has not been conclusively determined in the Fifth Circuit, although some circuit courts have applied such a requirement. *See Flecha*, 946 F.3d at 768 (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006). For example in *Flecha v. Medicredit, Inc.*, the Fifth Circuit "d[id] not reach the issue" but found it "significant" that the proposed class included "many unnamed class members . . . who lack the requisite injury to establish Article III standing." *Id.* Specifically, *Flecha* involved a class of individuals who had received a particular debt collection

letter from Medicredit. *Id.* at 765. Plaintiff sued under the Fair Debt Credit Collection Act, alleging that she and all others who had received the letter had been injured because the letter suggested that legal action was forthcoming even though the creditor had no intention to sue. *Id.* With respect to standing, the Court explained the putative class clearly swept in a large number of individuals who "ignored [the letter] as junk mail or otherwise gave it no meaningful attention" and accordingly were never be injured by it.

Similarly here, the proposed class sweeps in a large number of people who may never be subject to the alleged injury. At the time an individual becomes a class member, whether he will be injured is inherently speculative, as he has not yet appeared before a Defendant Judge. Although imminent injury is sufficient to constitute an "injury in fact" for Article III purposes, this class includes individuals who, when they appear before a Defendant Judge for reconsideration of the conditions of pretrial release, may not be injured even if the Defendant Judge fail to ask questions about affordability and alternative conditions. Specifically, this class definition includes individuals who will have their bail modified appropriately as well as those who are denied bail modification but whose initial bail was *constitutionally* imposed by the Magistrate Judge.

Nevertheless, like the *Flecha* court, the Court declines to reach the standing issue at this time. *See id.* at 768–69 (citing *Amchem*, 521 U.S. at 612). The Court will accordingly deny the pending 12(b)(1) motions without prejudice as premature, to be re-urged after additional discovery with respect to commonality, typicality, and 23(b)(2)'s requirements.

IV. **CONCLUSION**

Based on the foregoing.

**IT IS ORDERED** that Plaintiffs' Motion to Certify Class, R. Docs. 3, 48, are **DENIED** without prejudice to Plaintiffs' right to re-seek class certification after some discovery has been

conducted.

**IT IS FURTHER ORDERED** that Defendants' Motions to Dismiss, R. Docs. 28, 53 are **DENIED** without prejudice to Defendants' right to re-urge these motions after the Court has ruled on class certification.

**IT IS FURTHER ORDERED** that Defendants' Partial Motion to Dismiss, R. Doc. 17, is **DENIED AS MOOT**.

New Orleans, Louisiana this 21st day of August, 2020.

_____
Eldon E. Fallon
United States District Judge